UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-cv-22991-KMW

ROBERT M. LAWRENCE,

       Plaintiff,

v.

BAYVIEW LOAN SERVICING, LLC,

       Defendant.
_____/

# BAYVIEW LOAN SERVICING, LLC'S MOTION FOR SUMMARY FINAL JUDGMENT AGAINST ROBERT M. LAWRENCE

## I. INTRODUCTION

Robert Lawrence brings a one-count action against Bayview Loan Servicing, LLC (**Bayview**) for violation of the Telephone Consumer Protection Act (**TCPA**), 47 U.S.C. § 227(b)(1)(A)(iii). The crux of Mr. Lawrence's complaint is that defendant, Bayview Loan Servicing, LLC (**Bayview**) placed calls to his cellular telephone[1], without his prior express consent using an automatic telephone dialing system (**ATDS**). Mr. Lawrence's claim is misplaced, and seeks to ignore the undisputed fact that he repeatedly gave prior express consent for Bayview to place those calls to his cellular telephone. Mr. Lawrence first provided his cellular telephone number on a loan modification application, which fits perfectly within the definition of prior express consent. He then continued to provide Bayview with his cellular telephone number in thirty-two (32) separate letters in which he requested Bayview to assist in resolving a variety of disputes he had with his mortgage loan. Because he provided Bayview

---

[1] Mr. Lawrence's cellular telephone number, (916) 715-3295, will be referred to as the "cellular telephone number" for purposes of this motion.

{36360044;2}

with prior express consent to call his cellular telephone number, his TCPA claim fails, and summary final judgment in Bayview's favor is appropriate.

## II. UNDISPUTED FACTS[2]

Lawrence entered into a mortgage loan with American Brokers Conduit by executing a note in the amount of $1,000,000.00 and a deed of trust securing the loan on May 21, 2007 (the **Loan**). (S.U.F. ¶ 1.) The note was secured by a property located at 891 South Dyer Circle, Incline Village, Nevada (the **Property**). (S.U.F. ¶ 1.) Saxon Mortgage Services, Inc. (**Saxon**) was responsible for the daily management and administration of the Loan until April 2011. (S.U.F. ¶ 2.) During this period Saxon was responsible for such tasks as the collection of Mr. Lawrence's monthly mortgage payments and the review of the Loan for qualification for a loan modification. (S.U.F. ¶ 2.)

Mr. Lawrence applied and was approved for a loan modification with Saxon. As part of the loan modification Mr. Lawrence completed and submitted a Saxon Mortgage Financial Statement. (S.U.F. ¶ 3.) Mr. Lawrence included his cellular telephone number (916) 715-3295 in the Saxon Mortgage Financial Statement. (S.U.F. ¶ 4.) Mr. Lawrence also included his cellular telephone number in a letter to Saxon dated November 1, 2009. (S.U.F. ¶ 5.)

Bayview assumed the daily management and administration of the Loan, including the collection of monthly mortgage payments from Mr. Lawrence, on or about April 3, 2011. (S.U.F. ¶ 6.) Upon the transfer of servicing rights from Saxon to Bayview, all of the documents contained in Saxon's loan file for Mr. Lawrence, including the Saxon Mortgage Financial Statement and correspondence dated November 1, 2009, were transferred to Bayview. (S.U.F. ¶ 7.) The file Bayview received from Saxon for the Loan was reviewed for accuracy and the

---

[2] Bayview's Statement of Undisputed Facts (**S.U.F.**) is filed contemporaneously with this motion.

documents contained therein, including the Saxon Mortgage Financial Statement and correspondence dated November 1, 2009, were uploaded into Bayview's records keeping systems. (S.U.F. ¶ 8.) The information in the documents Bayview received from Saxon for the Loan, including Mr. Lawrence's cellular telephone number, was then used in the daily management and administration of the Loan. (S.U.F. ¶ 8.)

The only accurate working number belonging to Mr. Lawrence Bayview has ever possessed, from the time the loan was transferred from Saxon to the present, is the telephone number (916) 715-3295. (S.U.F. ¶ 9.) Mr. Lawrence's current cellular telephone number, (916) 715-3295, is the first and only cellular telephone number he has ever had. (S.U.F. ¶ 10.) Mr. Lawrence has had this cellular telephone number for approximately 20 years. (S.U.F. ¶ 10.) Mr. Lawrence's cellular telephone is the only telephone number he possesses. (S.U.F. ¶ 11.)

One of the methods by which Bayview contacts its clients is through use of ATDS calls. (S.U.F. ¶ 12.) The purpose of each and every ATDS call Bayview places is related to the management and administration, such as reminding clients a monthly mortgage payment is late or collecting on a loan in default, each specific mortgage loan for the specific client Bayview is attempting to contact. (S.U.F. ¶ 13.) Any and all ATDS calls placed to Mr. Lawrence's cellular telephone for purposes of administration and management of the Loan. (S.U.F. ¶ 14.)

A Bayview representative spoke with Mr. Lawrence as the result of an ATDS call on three dates, October 5, 2011, June 4, 2012, and July 7, 2012, from the commencement of Bayview's servicing of Mr. Lawrence's loan to the present. (S.U.F. ¶ 15.) These are the only instances wherein contact was made with Mr. Lawrence as the result of an ATDS. (S.U.F. ¶ 15.) The only instances wherein Mr. Lawrence requested Bayview not to call him were verbal requests which occurred during ATDS calls on the following dates: (1) October 5, 2011; (2) June 4, 2012; and (3) July 7, 2012. (S.U.F. ¶ 16.) Mr. Lawrence does not remember how many times

he verbally requested Bayview to cease calling him.  (S.U.F. ¶ 17.)  Bayview never received a written request from Mr. Lawrence asking for Bayview not to call him. (S.U.F. ¶ 18.)

Mr. Lawrence obtained the multiple addresses to which he sent his letters to Bayview from the mortgage loan statement mailed to him by Bayview and a 1099 form.  (S.U.F. ¶ 19.) Mr. Lawrence never mailed or addressed a letter to a specific department at Bayview because: (1) Mr. Lawrence believed Bayview was capable of receiving a letter and distributing the letter to the appropriate department; and (2) Mr. Lawrence does not know the names of the different departments at Bayview.  (S.U.F. ¶ 20.)  None of the letters Mr. Lawrence sent to Bayview included an explicit written limitation on how Mr. Lawrence's cellular telephone could be used. (S.U.F. ¶ 21.)

Mr. Lawrence sent Bayview a letter dated March 25, 2012, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 22.)

Mr. Lawrence sent Bayview a letter dated May 25, 2012, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 23.)

Mr. Lawrence sent Bayview a letter dated June 30, 2012, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 24.)

Mr. Lawrence sent Bayview a letter dated November 8, 2012, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 25.)

Mr. Lawrence sent Bayview a letter dated April 1, 2013, including his cellular telephone number, which Bayview received on April 9, 2013.  (S.U.F. ¶ 26.)

Mr. Lawrence sent Bayview a letter dated October 1, 2013, including his cellular telephone number, which Bayview received on October 15, 2013.  (S.U.F. ¶ 27.)

Mr. Lawrence sent Bayview a letter dated October 26, 2013, including his cellular telephone number, which Bayview received on November 15, 2013.  (S.U.F. ¶ 28.)

Mr. Lawrence sent Bayview a letter dated November 1, 2013, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 29.)

Mr. Lawrence sent Bayview a letter dated January 3, 2014, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 30.)

Mr. Lawrence sent Bayview a letter dated January 5, 2014, including his cellular telephone number, which Bayview received on January 5, 2014.  (S.U.F. ¶ 31.)

Mr. Lawrence sent Bayview a letter dated January 13, 2014, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 32.)

Mr. Lawrence sent Bayview a letter dated January 14, 2014, including his cellular telephone number, which Bayview received on January 21, 2014.  (S.U.F. ¶ 33.)

Mr. Lawrence sent Bayview a letter dated January 24, 2014, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 34.)

Mr. Lawrence sent Bayview a letter dated January 27, 2014, including his cellular telephone number, which Bayview received on February 28, 2014.  (S.U.F. ¶ 35.)

Mr. Lawrence sent Bayview a letter dated February 4, 2014, including his cellular telephone number, which Bayview received on February 13, 2014.  (S.U.F. ¶ 36.)

Mr. Lawrence sent Bayview a letter dated February 26, 2014, including his cellular telephone number, which Bayview received on March 3, 2014.  (S.U.F. ¶ 37.)

Mr. Lawrence sent Bayview a letter dated March 10, 2014, including his cellular telephone number, which Bayview received on March 17, 2014.  (S.U.F. ¶ 38.)

Mr. Lawrence sent Bayview a letter dated April 4, 2014, including his cellular telephone number, which Bayview received on April 11, 2014.  (S.U.F. ¶ 39.)

Mr. Lawrence sent Bayview a letter dated April 28, 2014, including his cellular telephone number, which Bayview received.  (S.U.F. ¶ 40.)

Mr. Lawrence sent Bayview a letter dated August 29, 2014, including his cellular telephone number, which Bayview received on September 4, 2014. (S.U.F. ¶ 41.)

Mr. Lawrence sent Bayview a letter dated October 1, 2014, including his cellular telephone number, which Bayview received on October 8, 2014. (S.U.F. ¶ 42.)

Mr. Lawrence sent Bayview a letter dated November 1, 2014, including his cellular telephone number, which Bayview received on November 3, 2014. (S.U.F. ¶ 43.)

Mr. Lawrence sent Bayview a letter dated December 1, 2014, including his cellular telephone number, which Bayview received on December 4, 2014. (S.U.F. ¶ 44.)

Mr. Lawrence sent Bayview a letter dated January 1, 2015, including his cellular telephone number, which Bayview received on January 3, 2015. (S.U.F. ¶ 45.)

Mr. Lawrence sent Bayview a letter dated February 1, 2015, including his cellular telephone number, which Bayview received on February 5, 2015. (S.U.F. ¶ 46.)

Mr. Lawrence sent Bayview a letter dated February 27, 2015, including his cellular telephone number, which Bayview received on March 5, 2015. (S.U.F. ¶ 47.)

Mr. Lawrence sent Bayview a letter dated April 1, 2015, including his cellular telephone number, which Bayview received on April 7, 2015. (S.U.F. ¶ 48.)

Mr. Lawrence sent Bayview a letter dated May 1, 2015, including his cellular telephone number, which Bayview received on May 4, 2015. (S.U.F. ¶ 49.)

Mr. Lawrence sent Bayview a letter dated June 1, 2015, including his cellular telephone number, which Bayview received on June 4, 2015. (S.U.F. ¶ 50.)

Mr. Lawrence sent Bayview a letter dated July 1, 2015, including his cellular telephone number, which Bayview received on July 6, 2015. (S.U.F. ¶ 51.)

Mr. Lawrence sent Bayview a letter dated August 1, 2015, including his cellular telephone number, which Bayview received on August 3, 2015. (S.U.F. ¶ 52.)

Mr. Lawrence sent Bayview a letter dated September 1, 2015, including his cellular telephone number, which Bayview received on September 5, 2015.  (S.U.F. ¶ 53.)

Mr. Lawrence's inclusion of his cellular telephone in his letters to Bayview was his providing of his consent for Bayview to contact him on that cellular telephone in order to resolve the issues raised in the letter. (S.U.F. ¶ 54.)   Mr. Lawrence believes it would be appropriate for someone who receives a letter with a phone number included in it to use that phone number to contact the person.  (S.U.F. ¶ 55.)

Mr. Lawrence included the contact information for his attorney in the letters bates stamped "Lawrence RFP_511-518" so that if someone who received the letters wanted to contact someone involved in this case they could contact Mr. Lawrence's attorney at the address and telephone number provided in the letter. (S.U.F. ¶ 56.)   The letters Mr. Lawrence sent to Bayview which are bates stamped "Lawrence RFP_508-520" were drafted from a letter template Mr. Lawrence created himself in August of 2014 and which included his cellular telephone number.  (S.U.F. ¶ 57.)

Bayview received a letter, dated April 30, 2013, which purported to have been sent by Mr. Lawrence but did not include Mr. Lawrence's cellular telephone number.  (S.U.F. ¶ 58.)

Bayview received a letter, dated September 1, 2013, which purported to have been sent by Mr. Lawrence but did not include Mr. Lawrence's cellular telephone number.  (S.U.F. ¶ 59.)

Bayview received a letter, dated December 24, 2013, which purported to have been sent by Mr. Lawrence but did not include Mr. Lawrence's cellular telephone number.  (S.U.F. ¶ 60.)

Bayview received a letter, dated May 25, 2014, which purported to have been sent by Mr. Lawrence but did not include Mr. Lawrence's cellular telephone number.  (S.U.F. ¶ 61.)

Bayview received a letter, dated July 18, 2014, which purported to have been sent by Mr. Lawrence but did not include Mr. Lawrence's cellular telephone number on.  (S.U.F. ¶ 62.)

Mr. Lawrence has called Bayview from his cellular telephone an estimated 50 times since Bayview started managing the Loan in April 2011. (S.U.F. ¶ 63.)   Mr. Lawrence spoke on the phone with Bayview employees by the names of: (1) Mitchell Beck in January 2014; (2) Norma Darias; (3) Terry; (4) Cynthia on December 24, 2013; (5) Andrea on January 23, 2014; and (6) Johnny on May 29, 2013 about insurance and accounting issues related to the Loan.  (S.U.F. ¶ 64.)

Mr. Lawrence sent a letter to the Federal Trade Commission dated May 17, 2011 concerning the Loan.  (S.U.F. ¶ 65.)

Mr. Lawrence sent a letter to the Consumer Financial Protection Bureau dated March 10, 2014 concerning the Loan.  (S.U.F. ¶ 66.)

Mr. Lawrence sent a letter to the Consumer Financial Protection Bureau dated April 4, 2014 concerning the Loan.  (S.U.F. ¶ 67.)

Mr. Lawrence sent a letter to the Florida Attorney General's Office dated April 4, 2014 concerning the Loan.  (S.U.F. ¶ 68.)

Mr. Lawrence sent a letter to the Nevada Attorney General's Office dated May 5, 2014 concerning the Loan.  (S.U.F. ¶ 69.)

### III. STANDARD OF REVIEW

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor."). However, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party. S.D.FLA.L.R.56.1(b).

**IV. BAYVIEW IS ENTITLED TO SUMMARY JUDGMENT AS TO NEARLY ALL THE ATDS CALLS**

Mr. Lawrence alleges Bayview violated the TCPA by making calls to his cellular telephone using an ATDS in violation of 47 U.S.C. §227(b)(1)(A)(iii). (FAC[3] ¶ 14.) The vast majority of the alleged ATDS calls are exempt from liability because Mr. Lawrence provided prior express consent to Bayview to be called on his cellular telephone by an ATDS.[4] Mr. Lawrence provided this prior express consent in two ways: (1) by including his cellular telephone number on the Saxon loan modification application; and (2) by including his cellular telephone number in at least 32 letters to Bayview. (S.U.F ¶ 3, 4, 22-53.)

**A.   Mr. Lawrence gave prior express consent by including his cellular telephone number in the Saxon Financial Statement.**

"Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA." *Mais v. Gulf Coast Collection Bureau, Inc.*, 786 F. 3d 1110, 1117 (11th Cir. 2014).[5] The primary guide for interpreting the term "prior express consent" in the TCPA is the FCC's 2008 Declaratory Ruling. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2008 FCC Ruling), 23 FCC Rcd. 559, 564. The 2008 FCC Ruling built upon and clarified a prior Report and Order issued by the FCC in 1992. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (1992 FCC Order ), 7 FCC Rcd. 8752, 8769 n. 57.

---

[3] "FAC" refers to the first amended complaint. (ECF No. 41.)

[4] Bayview concedes there is a genuine issue of material fact as to whether Mr. Lawrence revoked his consent verbally on the phone with Bayview representatives on October 5, 2011, June 4, 2012, and July 7, 2012. Therefore, Bayview does not seek summary final judgment for those calls falling between these dates and the subsequent letter received by Bayview from Mr. Lawrence reinstating his prior express consent for ATDS calls.

[5] District courts are bound to follow the interpretations of the TCPA set out by the 2008 FCC Ruling as they lack the jurisdiction to "enjoin, set aside, annul, or suspend" it under the Hobbs Act, 47 U.S.C. §402(a). *Mais*, 786 F. 3d at 1120.

The FCC's 1992 Order interpreted the TCPA broadly and stated "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 FCC Order, 7 FCC Rcd. at 8769.  The 2008 FCC Ruling dealt more specifically with the prior express consent given by a debtor to a creditor and ruled "wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."  2008 FCC Ruling, 23 FCC Rcd. at 559.

Mr. Lawrence's inclusion of his cellular telephone number in the Saxon loan modification application materials falls squarely within the 2008 FCC Ruling's definition of prior express consent.  *Id.* at 564 ("the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt").  The cellular telephone number was provided by Mr. Lawrence, the called party. (S.U.F. ¶¶ 4, 5).  Mr. Lawrence's cellular telephone number was provided in connection with his existing mortgage loan debt. (S.U.F. ¶¶ 3-5.)  Any ATDS calls which were subsequently placed to Mr. Lawrence's cellular telephone by Bayview were placed in connection with the administration and management of the Loan. (S.U.F. ¶ 14.).

The Eleventh Circuit has embraced a broad interpretation of the 2008 FCC Ruling on prior express consent.  *See Mais*, 786 F. 3d at 1122 (a debtor provided prior express consent for a hospital attempting to collect a debt arising from care provided when the debtor's wife included the debtor's cellular telephone on the hospital intake forms).  "While the 2008 FCC Ruling listed the completion of 'a credit application' as an example of the provision of a cell phone number to a creditor, the Commission did so illustratively, not exclusively." *Id.*  However, this matter does not need a broad interpretation, Mr. Lawrence provided his cellular number in an application to

modify the terms of his mortgage loan *i.e.* the very type of credit application the FCC used as an example in their 2008 Ruling. 23 FCC Rcd. at 564.

Courts have consistently found prior express consent where a cellular telephone number is "give[n] . . . 'during the transaction' that involves the debt", just as Mr. Lawrence did with his loan modification application. *Stephen M. Hill v. Homeward Residential, Inc.*, No. 2:13-cv-388, 2015 WL 4978464 *4 (6th Cir. Aug 21, 2015) (finding prior express consent where a borrower listed his cellular telephone number on a loan modification application); *see also Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014) ("Plaintiff's provision of his cellphone number of the Credit Application constitutes his prior express consent to be contacted on that cell phone using an automatic telephone dialing system.").

There is no genuine issue of material fact as to whether Mr. Lawrence's inclusion of his cellular telephone number in his loan modification application constituted prior express consent under the TCPA. The FCC rulings are clear and the courts have uniformly applied the interpretation to hold that providing a cellular telephone number such as Mr. Lawrence did constitutes prior express consent  Bayview is entitled to summary final judgment as to liability for all calls from the time Bayview commenced servicing of Mr. Lawrence's loan until October 5, 2011.[6]

**B.    Mr. Lawrence gave prior express consent by including his cellular telephone number in each letter sent to Bayview about his mortgage loan.**

Mr. Lawrence has provided continuous, systematic prior express consent to call his cellular telephone throughout his relationship with Bayview. In addition to providing his cellular

---

[6] October 5, 2011 is the first date Bayview concedes there is an issue of material fact as to whether Mr. Lawrence revoked consent. Prior to this date the facts are clear and undisputed that Mr. Lawrence never expressed a desire not to be called.

telephone number in the loan modification application, Mr. Lawrence included his cellular telephone number in at least 32 letters sent to Bayview. (S.U.F. ¶¶ 22-53).

Mr. Lawrence sent Bayview letters in a continuous and systematic manner which not only meets the definition of prior express consent, but goes beyond that to a level of an affirmative, express request to be contacted on his cellular telephone number. *See id.* Courts that have reviewed the issue have found prior express consent in acts which were far more passive than Mr. Lawrence's letter writing campaign. *See Baird v. Sabre, Inc., et al.*, 995 F. Supp. 2d 1100, 1104 (C.D. Cal. Jan. 28, 2014) (customer who provided her cellular telephone number while booking a plane ticket provided prior express consent to receive ATDS calls); *see also Ebling v. Clearspring Loan Services, Inc.*, 2015 WL 3439161 *3 (D. Minn. April 14, 2015) (finding express prior consent where plaintiff provided loan servicer with her cellular telephone number verbally over the telephone); *Chavez v. Advantage Group*, 959 F. Supp. 2d 1279, (D. Co. 2013) (finding prior express consent for hospital collecting a debt from medical services where plaintiff provided cellular telephone number in medical intake forms). While one letter including his cellular telephone number would have been adequate to establish prior express consent, it is abundantly clear in this situation based on the volume and substance of the multitude of letters that prior express consent has been established.

Mr. Lawrence cannot sidestep this prior express consent by claiming he only included his cellular telephone in the letters for use by certain individuals at Bayview. Such an attempt would fail both legally and factually.

"[A] debtor does not need to give his consent to automated calls specifically; his general consent to being called on a cellphone constitutes 'prior express consent'." The Eleventh Circuit has directly ruled on the topic of whether specific consent for ATDS calls must be provided in order to qualify as prior express consent. A recent opinion conducted a detailed analysis of prior

express consent and did not state that a party's consent must be to receiving auto-dialed, as opposed to manual calls. *Osorio v. State Farm Bank, FSB*, 746 F. 3d 1242 (11th Cir. 2014). Judge Middlebrooks recently viewed the Eleventh Circuit's failure to include such a distinction between consent for manual calls and consent for ATDS calls as implicit agreement with "the great weight of authority which has found that providing a cell phone number constitutes consent to be called, whether manually or by auto-dial." *Reed v. Morgan Drexen, Inc.*, 26 F. Supp. 3d 1287, 1295 (S.D. Fla. 2014).

While there are some courts[7] which have held consent must be specifically provided for ATDS, this view, as Judge Middlebrooks observed, is the minority. *See Baisden v. Credit Adjustments, Inc.*, No. 2:13-cv-992, 2015 WL 1046186 at *5 (S.D. Ohio Mar. 10, 2015) (a debtor who knowingly provides his cellular telephone number "is agreeing to allow the creditor to contact him regarding his debt, regardless of the means"); *Ebling v. Clearspring Loan Services, Inc.*, 2015 WL 3439161 *2 (D. Minn. April 14, 2015) (quoting *Baisden*); *Ranwick v. Texas Gila, LLC*, 37 F. Supp. 3d 1053, 1057-58 (D. Minn. Aug. 7, 2014) ("The thrust of the FCC's Rulings is that a person need not specifically consent to be contacted using an autodialer or artificial or prerecorded voice."); *Steinhoff v. Star Tribune Media Co.*, Civ. No. 13-1750, 2014 WL 1207804 at *3 (D. Minn. Mar. 24, 2014) (absent specific instructions, providing a cellular telephone number establishes prior express consent to be called by an ATDS).

The facts in this matter mirror a recent Sixth Circuit opinion finding the general provision of a cellular telephone number in a loan modification application to be adequate prior express for

---

[7] *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) (explicit consent is required for ATDS calls); *Saunders v. NCO Financial Systems, Inc.*, 910 F. Supp. 2d 464, 467 (E.D.N.Y. Dec. 19, 2012) ("voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent"); *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 C 4473, 2012 WL 3835089, at *2-3 (N.D. Ill. Sept. 4, 2012) ("[T]he consumer must give 'prior express consent' to robocalls – not to telephone calls in general.").

the mortgage loan servicer to place ATDS calls to the borrower in the course of collecting on the debt. *See Stephen M. Hill*, 2015 WL 4978464 at *5 ("[A] debtor does not need to give his consent to automated calls specifically; his general consent to being called on a cellphone constitutes 'prior express consent'.").

Mr. Lawrence's contention that his cellular telephone number in the letters was only meant for certain individuals at Bayview, and not general use, faces an overwhelming tide of contrary facts. Nearly every single letter was addressed to Bayview Loan Servicing, not a specific person or department, at Bayview's general address. (S.U.F. ¶¶ 22-27; 29; 33; 35;-37; 40-53; 58-62.) When Mr. Lawrence wanted to contact a specific Bayview employee, he addressed his letters to that person. (S.U.F. ¶¶ 28, 30-32; 34; 38-39.) Mr. Lawrence never made any attempt to obtain a specific address or facsimile number for any specific person or department. (S.U.F. ¶ 20.) His cellular telephone number was continuously included in correspondence on topics as general as the tendering of monthly payments. (S.U.F. ¶ 41-53.) As for the letters which were focused on specific topics, Mr. Lawrence admits he was providing his cellular telephone number for use by any Bayview employee capable of aiding him. (S.U.F. ¶ 54.) Even Mr. Lawrence had to admit it is reasonable to assume one may use a telephone number when provided in correspondence in the manner in which he repeatedly gave his cellular telephone number. (S.U.F. ¶ 55.)

Mr. Lawrence's cellular telephone number was the only telephone number Bayview has ever had in Mr. Lawrence's loan file. (S.U.F. ¶ 9.) It is the only telephone number Mr. Lawrence currently possesses. (S.U.F. ¶ 11.) It is the first and only cellular telephone number Mr. Lawrence has ever had, having used it for approximately 20 years. (S.U.F. ¶ 10) Mr. Lawrence's claims that Bayview was not permitted to contact him on his cellular telephone are

bordering on disingenuous when it was the only telephone number by which Bayview could possible reach him.

## V. CONCLUSION

For years, Mr. Lawrence admittedly sent letter after letter requesting communication with Bayview on his loan account, and expressly inviting and consenting to Bayview calling him on his cellular telephone. Now he seeks statutory damages for the very calls he requested. Bayview is entitled to summary final judgment on all ATDS calls placed from the time Bayview began servicing Mr. Lawrence's loan until October 5, 2011. Bayview is also entitled to summary final judgment on all calls falling after Bayview's receipt, on April 9, 2013, of Mr. Lawrence's letter dated April 1, 2013 which included in it his cellular telephone number.

Respectfully submitted,

/s/ William P. M<sup>c</sup>Caughan Jr.
Jeffrey A. Trinz, Fla. Bar No. 0265683
William P. M<sup>c</sup>Caughan Jr., Fla. Bar No. 0041573
**AKERMAN LLP**
One Southeast Third Avenue, 25th Floor
Miami, Florida 33131-1714
**Primary E-Mail:** jeffrey.trinz@akerman.com
**Secondary E-Mail:** elena.alzugaray@akerman.com
**Primary E-Mail:** william.mccaughan@akerman.com
**Secondary E-Mail:** joyce.williams@akerman.com
305-374-5600 (ph)/305-374-5095 (fax)

and

William P. Heller, Fla. Bar No. 987263
**AKERMAN LLP**
Las Olas Centre II
350 East Las Olas Blvd. Suite 1600
Fort Lauderdale, Florida 33301
**Primary E-Mail:** william.heller@akerman.com
**Secondary E-Mail:** lorraine.corsaro@akerman.com
954-759-8945 (ph)/954-463-2224 (fax)

*Counsel for defendant, Bayview Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2015, I electronically filed the notice of filing the *Bayview Loan Servicing, LLC's Motion for Summary Final Judgment Against Robert M. Lawrence*, with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following counsel of record via E-Mail and transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ William P. M<sup>c</sup>Caughan Jr.

## SERVICE LIST

| | |
|---|---|
| **Aaron D. Silvers, Esq.**<br>E-Mail: asilvers@floridaloanlawyers.com<br>**Yechezkel Rodal, Esq.**<br>E-Mail: chezky@floridaloanlawyers.com<br>Loan Lawyers, LLC<br>377 N. State Road 7, Suite 202<br>Plantation, FL 33317<br>Telephone: (954) 523-4357<br>Facsimile: (954) 581-2786<br>*counsel for plaintiff Robert M. Lawrence* | |