**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:14-CV-22991-KMW**

ROBERT M. LAWRENCE,

                Plaintiff,

vs.

BAYVIEW LOAN SERVICING, LLC,

                Defendant.

_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Five words. This entire case comes down to just five simple words—"absent instructions to the contrary". It is undisputed that Mr. Lawrence revoked any consent he may have given Defendant Bayview Loan Servicing, LLC's ("Bayview") to auto-dial his cellular telephone. Not once, not twice, but at least three different times. And Bayview understood exactly what Mr. Lawrence said, but chose to ignore it. Mr. Lawrence's request to have the calls cease was seen by Bayview's agents hundreds of times. In fact, whenever any Bayview employee would look up Mr. Lawrence's file, one of the first things they would see was a "standout message" which since 2011 stated that Mr. Lawrence had asked that Bayview stop calling him. Yet, Bayview failed to stop auto-dialing Mr. Lawrence's cellular telephone at least 280 times.

Providing a number to a creditor may be deemed express consent under the TCPA only "absent instructions to the contrary". There is simply no reasonable way that Bayview can argue that it did not have Mr. Lawrence's "instructions to the contrary". As such, Plaintiff, Robert M. Lawrence, by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, and S.D. Fla. L. R. 56.1, herby files his Motion for Partial Summary Judgement and respectfully requests this Honorable Court enter judgment in his favor and against Bayview, and in support thereof, states:

## I.     BACKGROUND

Bayview services the loan on Mr. Lawrence's property. Despite numerous requests that Bayview stop calling his cellular telephone, Bayview continued to dial Mr. Lawrence's cellular telephone via an automatic telephone dialing system ("ATDS") at least 280 times[1]. When Mr. Lawrence asked Bayview to stop calling him—Bayview raised a flag on his account and a message was left in a box that popped up every time a call was dialed and transferred to a Bayview agent. In blatant disregard for Telephone Consumer Protection Act ("TCPA"), Bayview ignored Mr. Lawrence's repeated requests—and its own do-not-call flag—and continued to auto-dial Mr. Lawrence's cellular telephone. Mr. Lawrence believes the violation of the TCPA was willful and intentional and should entitle him to an award of treble damages. However, such a determination of intent is better suited for trial and not a part of the instant motion. Mr. Lawrence seeks a judgment of $500.00 for each of Bayview's 280 calls made in violation of the TCPA.

## II.     MEMORANDUM OF LAW

### a. Legal Standard for Motion for Summary Judgment

A motion for summary judgment pursuant to Rule 56 may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Under Fed. R. Civ. P. 56(c), summary judgment is 'appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists 'no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.''" LeBlanc v. Unifund CCR Partners, LLC, 601 F.3d. 1185, 1189 (11th Cir. 2011) *citing* Fed. R. Civ. P. 56(c); Clemons v. Dougherty County, Ga., 684 F.2d 1365, 1368 (11th Cir.1982).

---

[1] These facts are taken from Plaintiff's Statement of Material Facts ("Statement"). [ECF No. 66].

"Once the moving party satisfies its burden, the burden of persuasion shifts to the non-moving party to establish the existence of a genuine issue of material fact." Id. *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "An issue is material if, 'under the applicable substantive law, it might affect the outcome of the case.'" Id. *citing* Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F. 3d 859, 860 (11th Cir. 2004) *citing* Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997). "As Fed. R. Civ. P. 56(e) states, 'When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" Young, at 860.

### b.  The TCPA

The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology" such as "computerized calls dispatched to private homes[,]" and "bans certain invasive telemarketing practices." Mims v. Arrow Fin. Services, LLC, 132 S. Ct. 740, 744 (2012). In response, Congress passed the TCPA to balance "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade." TCPA § 2(9), (13), 105 Stat. at 2394, 2395.

"[T]o demonstrate a violation of the TCPA, the Plaintiff need only show that [Defendant] called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." Breslow v. Wells Fargo Bank, N.A., 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012) *aff'd by* 2014 WL 2565984 (11th Cir. June 9, 2014). The provision of the TCPA applicable

to the calls at issue in this action, regarding calls placed to cellular telephones, provides as follows, in pertinent part:

> **(b) Restrictions on use of automated telephone equipment**
> **(1) Prohibitions**
> > It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
> > > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -- . . .
> > > (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[2];
>
> 47 U.S.C. § 227(b)(1)(A)(iii)

In sum, "[t]he [TCPA] makes it unlawful to make any call using an automatic telephone dialing system (an 'autodial system' [or 'ATDS']) to a cellular telephone without the prior express consent of the 'called party.'" Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 (11th Cir. 2014) Further, "'The TCPA is essentially a strict liability statute' that 'does not require any intent for liability except when awarding treble damages.'" Lardner v. Diversified Consultants Inc., 17 F. Supp. 3d 1215, 1220 (S.D. Fla. 2014)(citing Alea London Ltd. v. Am. Home Services, Inc., 638 F.3d 768 (11th Cir. 2011).

Here, it is undisputed that Bayview dialed Mr. Lawrence's cellular telephone number at least 280 times via an ATDS. This case will turn on Bayview's affirmative defense of express consent and Mr. Lawrence's revocation of same.

---

[2] The Eleventh Circuit has affirmed that the reference in 47 U.S.C. § 227(b)(1)(A)(iii) to the called party being "charged for the call" does not apply to calls placed to cellular telephones. Osorio, 746 F.3d, 1258. Accordingly, a plaintiff "is not required to prove that she was charged individually for each of the autodialed calls" in order to state a claim under the TCPA for calls placed to a cellular telephone. Id.

### c.  Express consent

The TCPA exempts from liability calls made to a cell phone "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). In its Answer and Affirmative Defenses, Bayview asserts the following as its Second Affirmative Defense:

> Lawrence's claim for violations of the TCPA fails as a matter of law because Lawrence gave Bayview prior express consent for the telephone calls at issue in this action. 47 U.S.C. § 227(b)(1)(A).

"[P]rior express consent" is "an affirmative defense for which the defendant bears the burden of proof." Lardner, 17 F. Supp. 3d at 1224(*citing* Grant v. Capital Mgmt. Services, L.P., 449 Fed. Appx. 598, 600 n. 1 (9th Cir. 2011); Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012) aff'd, 755 F.3d 1265 (11th Cir. 2014). Bayview bears the burden of establishing prior consent. Pollock v. Bay Area Credit Serv., LLC, 2009 WL 2475167, *9–10 (S.D. Fla. 2009) (Dimitrouleas, J.).

Moreover, the FCC has expressly stated that the creditor bears the burden of proving "prior express consent" under the TCPA. In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, ¶ 10 (2008)(hereafter "2008 FCC Ruling[3]"). However, even if express consent was provided, the inquiry does not end there. Under the TCPA, "[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." Osorio v. State Farm Bank, FSB, 746 F. 3d 1242, 1253 (2014) *quoting* Gager v. Dell Fin. Servs., LLC, 727 F. 3d 265, 270-71 (3rd Cir. 2013).

### d.  It is Conclusively Established that Mr. Lawrence did not Provide his Telephone Number to Bayview

---

[3] The Court is bound by the FCC's rulings as the Hobbs Act, "expressly confers on the federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such FCC orders." *See* Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1119-1120 (11th Cir. 2014)(internal citations omitted.

On November 21, 2014, Mr. Lawrence served his First Request for Admissions upon Bayview. On February 6, 2015, Bayview served its responses to Mr. Lawrence's First Request for Admissions. In Response to Request No. 19, Bayview admitted that Mr. Lawrence never gave to Bayview the number (916) 715-3295. [*ECF No. 66-3 at 4*].

Fed. R. Civ. P. 36 (a)(1) provides that a party may serve upon any other party "a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope [of the discovery rules]." Fed. R. Civ. P. 36(b) states, in relevant part, as follows:

> A matter admitted under this rule is *conclusively established* unless the court *on motion* permits withdrawal or amendment of the admission.

Fed. R Civ. P. 36(b) (emphasis added).

Bayview's subsequent amended response denying the same admission nearly five months later is of no consequence as Bayview failed to obtain leave of Court to withdraw or amend its admission. Accordingly, it is "conclusively established" for the purposes of this action that Mr. Lawrence did not provide his cellular telephone number to Bayview, and any argument showing otherwise should be stricken from the record.

Notwithstanding the aforementioned, Bayview will argue that Mr. Lawrence did indeed provide Bayview with his telephone number in numerous documents. However, such an argument must be made by motion to withdraw or amend the previous admission. Despite notice of this requirement of the rule, Bayview has not filed such a motion, thereby binding its admission to Request No. 19 of Plaintiff's First Request for Admissions. Instead, Bayview decided to just amend it responses without leave of Court. The Eleventh Circuit was very clear on this point:

> Because Dothan never sought to withdraw or amend its admission, the court was not free to reject this "conclusively established" fact even if it "[found]

> more credible the evidence of the party against whom the admissions operate. Dothan's argument that plaintiffs were not prejudiced by the district court's computation and that a later admission explained that its prior admission was simply based on the Project 30 assessment roll, which did not include non-assessed related project improvements, does not change the conclusive effect of its prior admission, which admitted the city's contribution without any explanation or qualification.

Williams v. City of Dothan, Ala., 818 F.2d 755, 762 (11th Cir. 1987) (citation omitted).

"In the Eleventh Circuit, it is reversible error for a district court to discount facts that are "conclusively established" through Rule 36 admissions, "even if it '[finds] more credible the evidence of the party against whom the admissions operate.'" Hicks v. Mercedes-Benz U.S. Intern., Inc., 2012 WL 2863249, at *4 (N.D. Ala. 2012)(citing Williams). Moreover, "admissions are unlike other evidence in that a party cannot rebut its own admissions by introducing evidence that contradicts it." Jacobs v. Elec. Data Sys. Corp., 2:05CV925-MHT, 2006 WL 3742202, at *3 (M.D. Ala. 2006)(citing In re Carney; United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir.1987); see also 8A Wright, Miller & Marcus, § 2264, at 572-74.) Once an issue is deemed admitted, the admission is conclusive unless withdrawn upon motion to the court. Perez v. Miami-Dade County, 297 F.3d 1255, 1264 (11th Cir.2002); United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir.1992); Stubbs v. Comm'r, 797 F.2d 936, 937-38 (11th Cir.1986) (per curiam).

As the Fifth Circuit has held in a similar circumstance: Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment. Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record. In re Carney, 258 F.3d 415, 420 (5th Cir. 2001) (emphasis added) (citing numerous decisions at fn. 6 all noting admissions as to matters dispositive of a case and granting summary judgment on basis of deemed admissions). As such,

Bayview's argument and evidence that Mr. Lawrence provided his number to Bayview which constitutes express consent is due to be summarily denied.

### e.   Mr. Lawrence properly Revoked Consent Numerous Times

Even if the Court were to review Bayview's evidence that Mr. Lawrence provided his telephone number to Bayview—the argument still fails, as person may revoke consent under the TCPA either orally or in writing. Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1256 (11th Cir. 2014). "[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." Id., at 1253 *quoting* Gager v. Dell Fin. Servs., LLC, 727 F. 3d 265, 270-71 (3rd Cir. 2013).

However, very recently, the Federal Communication Commission ("FCC") gave more clarity on this issue[4]. *In re Rules and Regulations Implementing the TCPA of 1991,* Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, ¶¶ 49, 52, 2015 WL 4387780 (released Jul. 10, 2015), https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (the "2015 FCC  Order"[5]). The 2015 FCC Order responded to 21 petitions by a number of companies and trade associations who sought relief or clarification regarding the requirements of the TCPA.

In its 2015 FCC Order, the FCC "clarify[ied] that a called party may revoke consent at any time and through any reasonable means.  A caller may not limit the manner in which revocation may occur." Order at ¶¶47; 56. The FCC also "agree[d] with commenter Shields who argues that

---

[4] The FCC has express authority to prescribe regulations to implement this provision. 47 U.S.C. § 227(b)(2); *see also* 47 C.F.R. § 64.1200 (implementing regulations). Additionally, The Eleventh Circuit found that FCC Rulings interpreting the TCPA "ha[ve] the force of law" and that "[a] district court [is] without jurisdiction to consider the wisdom and efficacy of [an] FCC Ruling." Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1121 (11th Cir. 2014).

[5] References to the 2015 FCC Order will be by paragraph number—Order at ¶.

"Congress' omission of a limited form of revocation means that Congress intended for broad common law concepts of consent and revocation of consent to apply."." Order at ¶59.

Moreover, the FCC conclusively and unambiguously stated that "that callers may not control consumers' ability to revoke consent." Order at ¶64. "Consumers have a right to revoke consent, using any reasonable method including orally or in writing.  Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities." Order at ¶65.

Perhaps the most salient passage in the Order is in ¶67, in that "the TCPA requires only that the called party clearly express his or her desire not to receive further calls". It is obvious and undisputed that Mr. Lawrence clearly expressed his desire not to receive further calls. Moreover, in footnote 233 the FCC advised that "[w]hen assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the totality of the facts and circumstances surrounding that specific situation".

Further, the FCC cited with approval the Third Circuit's holding that "in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers". *Order* at fn. 248, c*iting* <u>Gager</u>, 727 F.3d 265, 270 (3d Cir. 2013). The FCC, however, did not provide a dispositive list of what constitutes "reasonable" rather it suggested revocation is possible in a variety of ways.  "The FCC concluded that, with respect to the issue of revocation of consent, "the most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts ... [t]his gives consent its most appropriate meaning within the consumer-protection goals of the TCPA."." <u>Morris v. Ocwen Loan Servicing, LLC</u>,  2015 WL 5072011, at *3 (S.D. Fla. 2015)(citing the 2015 FCC Order).

Here, it is undisputed that Mr. Lawrence revoked consent on October 5, 2011, June 4, 2012, and July 7, 2012. *See Statement,* ¶¶ 7, 13, 21. Bayview will likley rest their case on the fact that Mr. Lawrence provided his number on other correspondence to Bayview. For example, on a letter dated March 25, 2012 [ECF No. 63-5]. However, the facts show that Mr. Lawrence revoked any consent twice after that letter just as he did after the May 25, 2012 letter which contained his number. [ECF No. 63-6]. Similarly, even after writing his number on the June 30, 2012, letter, Mr. Lawrence again revoked his consent. [ECF. No. 63-7].

Thus, it should have been readily apparent to Bayview that Mr. Lawrence's providing his number was not consent, because he gave instructions to the contrary.

> We disagree with Glide that consent can be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. For non-telemarketing and non- advertising calls, express consent can be demonstrated by the called party giving prior express oral or written consent or, in the *absence of instructions to the contrary*, by giving his or her wireless number to the person initiating the autodialed or prerecorded call.

FCC Order at ¶52 (emphasis added).

This premise is not new and dates back to 1992. *See 1992 TCPA Order,* 7 FCC Rcd at 8769, para. 31 (autodialed calls lawful under the TCPA so long as the called party has granted "permission to be called at the number which they have given, absent instructions to the contrary").

Moreover, it is undisputed that Bayview did not rely on any of Mr. Lawrence's letters addressed to Bayview for express consent. *Statement,* at ¶22. Bayview never stopped calling Mr. Lawrence despite his multiple revocations, never removed his number despite his multiple revocations, and took no action in any way to adhere to Mr. Lawrence's multiple revocations. Likewise, Bayview did not add Mr. Lawrence's number to the account once he provided it on the letters and Bayview is only looking back now and trying to take advantage of the letters although

the letters were of no benefit at the time to Bayview's belief that Mr. Lawrence had consented to be called.

Moreover, it is undisputed that even after Bayview received letters with Mr. Lawrence's phone number, the "standout message" that popped up when Mr. Lawrence's account was accessed clearly stated that he did not want to receive any more calls. This message was seen hundreds of times, yet ignored. *Statement,* at ¶¶ 19, 20. Even an e-mail to a supervisor regarding the revocation went unheeded. *Statement,* at ¶¶ 9, 10. In fact, when asked specifically in Interrogatory No. 20, Bayview's response was that it was not possible to determine whether Mr. Lawrence's account was modified in response to his providing his telephone number. *See ECF No. 66-6 at 3.*

*Bayview even continued calling Mr. Lawrence months after being served with the instant TCPA lawsuit.* What is clear is that Bayview decided to just ignore Mr. Lawrence and the law. Bayview should not be allowed to conjure up some theory about numbers on a letter template that were completely meaningless to Bayview prior to the institution of this action.

### f. Damages

"The TCPA is essentially a strict liability statute..." Alea London, Ltd. v. Am. Home Serv., Inc., 638 F. 3d 768, 776 (11th Cir. 2011). "The TCPA does not require any intent for liability except when awarding treble damages." Id. Plaintiff is entitled to receive no less than $500.00 for each such violation. 47 U.S.C. § 227(b)(3); Fillichio v. M.R.S. Assocs., Inc., 2010 WL 4261442, at *4 (S.D. Fla. 2010). It is undisputed that Mr. Lawrence revoked consent on October 5, 2011. *Statement,* ¶ 7. Bayview admitted to dialing Mr. Lawrence's celular telephone number via an ATDS at least 280 times between October 6, 2011 and December 31, 2014. *ECF No. 66-2, Response to Plaintiff Secnd Request for Admission, Request No. 4.* Mr. Lawrence knows there were more than 280 calls, but there remains a genuine issue of material fact as to the additional

calls which are better suited for trial.

  **WHEREFORE**, Plaintiff respectfully requests this Court enter judgement for Mr.

Lawrence and against Bayview for $140,000.00 comprised of $500.00 for each of the 280 calls at

issue in this Motion, and for such other and further relief as this Court deems just and proper. Mr.

Lawrence will proceed to trial on the remaining calls as well as to the issue of treble damages.

        Respectfully submitted,

        /s/Yechezkel Rodal_____
        YECHEZKEL RODAL, ESQ.
        FBN 091210
        LOAN LAWYERS, LLC
        *Attorneys for Plaintiff*
        2150 S. Andrews Ave., 2nd Floor
        Fort Lauderdale, FL 33316
        Telephone: (954) 523-4357
        Facsimile: (954) 581-2786
        E-Mail: chezky@floridaloanlawyers.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on October 15, 2015 with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

William McCaughan, Jr., Esq.
Akerman LLP
One Southeast Third Avenue, 25th Floor
Miami, FL 33131
Counsel for Defendant
Service by CM/ECF

LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone:     (954) 523-4357
Facsimile:     (954) 581-2786

/s/Yechezkel Rodal_____
YECHEZKEL RODAL, ESQ.
FBN 091210
E-Mail: chezky@floridaloanlawyers.com