UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:14-CV-22991-KMW

ROBERT M. LAWRENCE,

        Plaintiff,

vs.

BAYVIEW LOAN SERVICING, LLC,

        Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY
FINAL JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

There can be no doubt that the Federal Communications Commission[1] ("FCC") contemplated a scenario where a consumer provides his cellular telephone number to the caller—yet—said provision does not constitute express consent. After all, the FCC could not be more clear on this point by including the words "absent instructions to the contrary" nearly every time it has addressed this issue. Well, as it turns out, it is undisputed that Mr. Lawrence did give instructions to the contrary.

As is to be expected with cross-motions for summary judgment—the Parties do not disagree much on the facts and Plaintiff hereby incorporates his memorandum of law from his own Motion for Summary Judgement. [D.E. 67]. Bayview Loan Servicing, LLC ("Bayview") essentially makes two points in support of its Motion for Summary Final Judgment ("the Motion"). First, that Mr. Lawrence provided his express consent to be called on his cellular telephone by an automatic dialing system ("ATDS") by supplying his number on a loan

---

[1] "Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA." Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1117 (11th Cir. 2014). The Court is bound by the FCC's rulings as the Hobbs Act, "expressly confers on the federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such FCC orders." See Mais, at 1119-1120 (internal citations omitted).

modification agreement, and second, that Mr. Lawrence's provision of his number on subsequent letters was also his express consent. Mr. Lawrence does not take issue with the former for purposes of this response but takes great exception to the latter. Bayview has conveniently left in the shadows the five crucial words Mr. Lawrence's motion for summary judgement is based upon—"absent instructions to the contrary".

It is undisputed that Mr. Lawrence revoked any consent he may have given Bayview to auto-dial his cellular telephone. Not once, not twice, but at least three different times. And Bayview understood exactly what Mr. Lawrence said, but chose to ignore it. Mr. Lawrence's request to have the calls cease was seen by Bayview's agents at least dozens upon dozens of times. In fact, whenever any Bayview employee would look up Mr. Lawrence's file, one of the first things they would see was a "standout message" which since 2011 stated that Mr. Lawrence had asked that Bayview stop calling him. Yet, Bayview failed to stop auto-dialing Mr. Lawrence's cellular telephone at least 280 times.

### a. Mr. Lawrence Revoked his Express Consent

The TCPA exempts from liability calls made to a cell phone "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). As early as 1992, the FCC held that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 1992 FCC Order, 7 FCC Rcd. at 8769. Of course, providing a number is not express consent to be called via an ATDS as that is the definition of implied consent. However, the FCC has in effect turned implied consent into express consent. Mr. Lawrence does not argue that provision of his number on his loan modification agreement would be considered express consent.

However, the point Mr. Lawrence is making is that once revocation occurs, the stakes

change. Revocation must mean something and cannot be looked upon in a vacuum. For purposes of this Response, this principal shall be referred to as the "Renunciation Doctrine". After all, the FCC knew that there would be times where a consumer wanted to receive calls from a company but not want to receive auto-dialed calls. This is exactly why the FCC added in the five words— "absent instructions to the contrary". This is exactly what happened here. Mr. Lawrence had some serious issues with Bayview's handling of his loan that he was trying to remedy. Again, Mr. Lawrence is not arguing that his listing of his number would not be express consent under normal circumstances. However, this is not normal circumstances. Here, Mr. Lawrence expressly revoked consent. Once he expressly revoked his consent, the Renunciation Doctrine kicks in.

This logic is consistent with Eleventh Circuit law. "[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." <u>Osorio v. State Farm Bank, FSB</u>, 746 F. 3d 1242, 1253 (2014) *quoting* <u>Gager v. Dell Fin. Servs., LLC</u>, 727 F. 3d 265, 270-71 (3rd Cir. 2013).

To be fair, Bayview's argument would be much more compelling if it had relied upon Mr. Lawrence's provision of his phone number on the 32 purported occasions cited in the Motion. If Bayview had honored Mr. Lawrence's repeated revocations, removed his number and then added it back after Bayview received a letter contained the number, there could be a good-faith policy argument. This is simply not the case. Bayview did not honor Mr. Lawrence's revocation. Bayview ignored a do-not-call flag dozen upon dozen of times. Bayview did not rely on Mr. Lawrence's provision of his number to Bayview in any way[2].

It is undisputed that Mr. Lawrence revoked his consent at least 3 times. *See Bayview's Statement of Undisputed Facts*, ¶19 [D.E. 64-1] ("SOUF"). In fact, one of Bayview's agents—

---

[2] Plaintiff's Statement of Material Facts, ¶ 2 ("SOMF""). [D.E. 66].

David Vaughan—sent an e-mail to his supervisor regarding the do not call flag. *SOMF*, ¶9. Conveniently for Bayview, that e-mail has since been destroyed. *SOMF*, ¶10. Moreover, Bayview cannot argue that the subsequent letters overcome the Renunciation Doctrine because Mr. Lawrence expressly revoked his consent even after sending Bayview a letter containing his phone number. Even according to Bayview, Mr. Lawrence revoked his consent on October 5, 2011, June 4, 2012, and July 7, 2012. *SOUF*, ¶16.

Following the first undisputed revocation on October 5, 2011, the first time Bayview claims Mr. Lawrence provided his number on a letter was on March 25, 2012. *SOUF*, ¶22. Mr. Lawrence revoked his consent two times after that, on June 4, 2012, and July 7, 2012. Those two revocations are clearly "instructions to the contrary". The next time Bayview claims Mr. Lawrence provided his number on a letter was on May 25, 2012. *SOUF*, ¶23. Mr. Lawrence revoked his consent two times after that, on June 4, 2012, and July 7, 2012. Those two revocations are clearly "instructions to the contrary".

The next time Bayview claims Mr. Lawrence provided his number on a letter was on June 30, 2012. *SOUF*, ¶24. Mr. Lawrence revoked his consent after that on July 7, 2012. This revocation confirmed Mr. Lawrence's "instructions to the contrary". Again, it is undisputed that Bayview did not rely on Mr. Lawrence's provision of his number in the subsequent letters. That is merely being used as an excuse now. Bayview simply cannot overcome the Renunciation Doctrine. Bayview continued calling Mr. Lawrence via an ATDS despite being keenly aware that he had revoked his consent.

According to Bayview's own representative, every call that was placed to Mr. Lawrence that was a progressive call would have contained the "standout message" stating that Mr. Lawrence did not want to be called. *SOMF,* ¶19.  As long as the "standout message" was in

4

place, every loan counselor or customer service representative that called Mr. Lawrence would have known that Mr. Lawrence didn't want to be called on his cell phone. *SOMF,* ¶19. According to servicing notes for Mr. Lawrence's loan[3], a progressive call was placed on December 6, 2012. [D.E. 63-2 at 34]. Thus, even as late as December 6, 2012, a Bayview agent was still seeing the standout message stating that Mr. Lawrence did not wish to be called.

Mr. Lawrence maintains that the testimony in this matter demonstrates that every time a call was transferred to an agent, the agent saw the do-not-call flag in the system and ignored it. *SOMF*, ¶ 20. For example, on October 26, 2013 at 13:35, [D.E. 63-2 at 79] when a Bayview agent left a message for Mr. Lawrence, that agent would have seen the standout screen with the do-not-call flag, just as Mark Bernstein did. *SOMF*, ¶¶12, 18. Same thing on November 26, 2013 at 15:42. [D.E. 63-2 at 88]. Yet, in the month of November 2013, Bayview placed at least 25 calls to Mr. Lawrence's cellular telephone and at least 41 calls in December 2013. At the very least, whether every call raised the do-not-call flag is a question of material fact.

### b. Mr. Lawrence properly Revoked Consent Numerous Times

While Mr. Lawrence maintains that it is crystal clear that the subsequent letters do not constitute express consent, at the very least there remains a genuine question of material fact as to whether Mr. :Lawrence's revocation was reasonable. In footnote 233 of the FCC's 2015 Order[4], the FCC advised that "[w]hen assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the totality of the facts and circumstances surrounding that specific situation". Further, the FCC cited with approval the Third Circuit's holding that "in light of the TCPA's purpose, any silence in the statute as to the right of

---

[3] In support of its Motion, Bayview filed the affidavit of Vanessa Maestu. [D.E. 63-1]. Attached to the affidavit as Exhibit A was the servicing notes for Mr. Lawrence's loan. [D.E. 63-2].

[4] *In re Rules and Regulations Implementing the TCPA of 1991,* Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, ¶¶ 49, 52, 2015 WL 4387780 (released Jul. 10, 2015).

revocation should be construed in favor of consumers". *Order* at fn. 248, c*iting* Gager, 727 F.3d 265, 270 (3d Cir. 2013).

"The FCC concluded that, with respect to the issue of revocation of consent, "the most reasonable interpretation of consent is to allow consumers to revoke consent if they decide they no longer wish to receive voice calls or texts ... [t]his gives consent its most appropriate meaning within the consumer-protection goals of the TCPA."." Morris v. Ocwen Loan Servicing, LLC, 2015 WL 5072011, at *3 (S.D. Fla. 2015)(citing the 2015 FCC Order). Therefore, whether the Mr. Lawrence's method of revocation was reasonable becomes a question of fact to be determined by a jury.

It is well-established that issues related to reasonableness are ones of fact which must be resolved by a jury as they are not susceptible to being summarily adjudicated as a matter of law. Equitable Life Assur. Soc. of U.S. v. Studenic, 77 F.3d 412, 416 (11th Cir. 1996). Determining whether one's conduct was reasonable is typically assessed by a jury within the context of the evidence presented. Gauck v. Meleski, 346 F.2d 433, 437 (5th Cir.1965); Gaisser v. Portfolio Recovery Associates, LLC, 593 F. Supp. 2d 1297, 1301 (S.D. Fla. 2009); Ramirez v. Palisades Collection LLC, 2008 WL 2512679, at *6 (N.D. Ill. 2008) (question of reasonableness of debt collector's screening procedures regarding determination of applicable statute of limitations is an issue of fact for jury); Niven v. National Action Financial Services, Inc., Case No. 07–cv–1326, 2008 WL 4190961, at *3 (M.D. Fla. 2008) ("Defendant's intent and whether the error was bona fide are classic issues of fact, inappropriate for resolution on summary judgment.").

Again, it is undisputed that Bayview did not rely on any of Mr. Lawrence's letters addressed to Bayview for express consent. *SOMF,* at ¶22. Bayview never stopped calling Mr. Lawrence despite his multiple revocations, never removed his number despite his multiple

revocations, and took no action in any way to adhere to Mr. Lawrence's multiple revocations. Likewise, Bayview did not add Mr. Lawrence's number to the account once he provided it on the letters and Bayview is only looking back now and trying to take advantage of the letters although the letters were of no benefit at the time to Bayview's belief that Mr. Lawrence had consented to be called. Moreover, the overwhelming majority of the times Mr. Lawrence provided his phone number it was merely on a letterhead he had created that contained his address, telephone number and e-mail address.

Moreover, it is undisputed that even after Bayview received letters with Mr. Lawrence's phone number; the "standout message" that popped up when Mr. Lawrence's account was accessed clearly stated that he did not want to receive any more calls. This message was seen dozens of times, yet ignored. *SOMF,* at ¶¶ 19, 20. Even an e-mail to a supervisor regarding the revocation went unheeded. *SOMF,* at ¶¶ 9, 10.

*Bayview even continued calling Mr. Lawrence months after being served with the instant TCPA lawsuit*. Why? Because Mr. Lawrence included his number on a letterhead that accompanied his monthly mortgage payment. Bayview claims that provision gave them the right to call Mr. Lawrence via an ATDS despite the numerous revocations and despite the filing of the instant action. If filing a lawsuit under the TCPA does not evidence a desire not to be called by an ATDS—there is little could.

What is clear is that Bayview decided to just ignore Mr. Lawrence and the law. Bayview should not be allowed to conjure up some theory about numbers on a letter template that were completely meaningless to Bayview prior to the institution of this action.

    c. **It is Conclusively Established that Mr. Lawrence did not Provide his Telephone Number to Bayview**

Mr. Lawrence hereby incorporates by reference Section II(d) of his own Motion

regarding his First Request for Admissions to Bayview.

**WHEREFORE**, Plaintiff respectfully requests this Court deny Bayview's Motion for Summary Judgment and for such other relief as the Court deems just and proper.

Respectfully submitted,

/s/Yechezkel Rodal_____
YECHEZKEL RODAL, ESQ.
FBN 091210
LOAN LAWYERS, LLC
*Attorneys for Plaintiff*
2150 S. Andrews Ave., 2nd Floor
Fort Lauderdale, FL 33316
Telephone:  (954) 523-4357
Facsimile:  (954) 581-2786
E-Mail: chezky@floridaloanlawyers.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed on November 9, 2015 with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

William McCaughan, Jr., Esq.
Akerman LLP
One Southeast Third Avenue, 25th Floor
Miami, FL 33131
Counsel for Defendant
Service by CM/ECF

                                        LOAN LAWYERS, LLC
                                        *Attorneys for Plaintiff*
                                        2150 S. Andrews Ave., 2nd Floor
                                        Fort Lauderdale, FL 33316
                                        Telephone:    (954) 523-4357
                                        Facsimile:    (954) 581-2786

                                        /s/Yechezkel Rodal_____
                                        YECHEZKEL RODAL, ESQ.
                                        FBN 091210
                                        E-Mail: chezky@floridaloanlawyers.com